PEOPLE *ex rel.* SETH THOMAS CLOCK CO. *v.* WEMPLE, Comptroller.

(*Supreme Court, General Term, Third Department.* December 5, 1891.)

1. TAXATION—FOREIGN CORPORATIONS—EXEMPTION—EVIDENCE.

Laws 1880, c. 542, § 3, imposes a tax on all foreign corporations doing business in the state of New York "except * * * manufacturing corporations carrying on manufacture within this state." *Held,* that a corporation having its manufacturing plant, with an annual product of the value of $700,000, in the state of Connecticut, its principal sales-office in the city of New York, but manufacturing goods to the value of about $16,000 yearly in the state of New York, is not within the exception of the statute, and is liable to the tax.

2. SAME—BASIS OF TAXATION—HOW ASCERTAINED.

The statute further provides that the amount of capital stock which shall be the basis of taxation of the corporation shall be the amount of its capital stock employed in the state. *Held,* in the absence of better evidence on the part of the corporation, that the comptroller properly ascertained the amount of capital stock used in New York by assuming that the capital stock employed in the state was in proportion to the whole capital stock as the amount of sales made in the state was to the total amount of the sales of the corporation.

*Certiorari* on the relation of the Seth Thomas Clock Company, a foreign corporation doing business in the state of New York, to review the decision of the comptroller of the state imposing a tax on relator. Affirmed.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Rodman & Cogswell,* for relator. *Charles F. Tabor,* (*I. H. Maynard,* Dep. Atty. Gen., of counsel,) for respondent.

LANDON, J. Chapter 542, Laws 1880, § 3, provides that "every corporation * * * incorporated or organized by or under the laws of any other state or country, and doing business in this state, except * * * manufacturing corporations carrying on manufacture within this state, * * * shall be subject to and pay a tax, as a tax upon its corporate franchise or business, into the treasury of the state annually," etc. This section of the act was amended by chapter 361, Laws 1881, and chapter 359, Laws 1885, but not so as to affect the application of the above language to the relator in the particular first to be considered, namely: Did the relator, in addition to doing business in this state, (as to which there is no question,) also carry on manufactures within this state during all the years from 1880 to 1890, both inclusive? The relator was organized in 1853 under the laws of the state of Connecticut, and during the years in question was extensively engaged within that state in manufacturing clocks and watches. Its plant and machinery for the purpose are, and always have been, situated in Thomaston, in the state of Connecticut. Its manufacturing done there has averaged a yearly product valued at from $500,000 to $700,000. At the same time it has had its principal sales-rooms and office in the city of New York. Its sales in and from its New York rooms have exceeded in amount and value all its sales in and from all its other sales agencies. A large part of the sales, however, are made by means of samples, and the goods are in such case delivered from the manufactory in Connecticut. The relator has at the same time done manufacturing in New York of the yearly amount of from $16,000 to $20,000, but of what character, or upon what basis computed, does not appear. This manufacturing probably consists in some incidental additional work to the manufactured products forwarded from Connecticut to New York, such as may conveniently and suitably be added at the place where the manufactured product is exposed for sale. It is about 2 per centum of the whole product, and less than 4 per centum of the amount sold in and from New York. The statute in question should have such reasonable construction as will give effect to the legislative intent. As was said in *People* v. *Mining Co.,* 105 N. Y. 70, 82, 11 N. E. Rep. 155, in which a similar question was presented, in order to give such effect, the ordinary meaning of the phraseology employed

in the act may be enlarged or restricted. It was there also said that, "in exempting such corporations from taxation under the act, the legislature may be supposed to have been influenced by two things,—a desire to encourage manufactures within the state, and the fact that a corporation carrying on any business within the state would necessarily have visible, tangible property, liable, under the general laws of the state, to taxation." It certainly could not have been intended that a foreign corporation doing so large a business within the state in the sales of its product, and so small a part of the work of manufacturing it, could, by its technical and nearly colorable act of "carrying on manufactures within the state," be entitled to the exemption which was intended to secure to the state the benefit resulting from a substantial compliance with the terms of the statute.

We think the relator is not within the exemption. By the terms of the act "the amount of capital stock which shall be the basis for tax under the provisions of section three of this act  *  *  *  shall be the amount of capital stock employed within this state." The comptroller fixed for each year the amount of such capital stock employed within the state. It is claimed that his valuations were excessive. He made them principally from the facts stated in the reports of the relator, made by it under protest. It appears that up to 1884 the paid-up capital stock of the relator was $500,000, and thereafter $600,000. The comptroller ascertained the entire sales of the relator for each year, the proportion thereof made in and from New York; the amount of the stock in trade carried in each year by the relator in that city; the rentals paid for accommodations there; and its average monthly balances in the New York banks. It appeared that most of its business was directed from its New York office. The result reached by the comptroller indicates that he fixed the capital stock employed in New York by assuming that the capital stock employed within this state was in proportion to the whole capital stock as the amount of sales made in this state was to the total amount of sales. We do not suppose that this is absolutely right; the best the comptroller could do was to make it approximately right. The relator made application under chapter 463, Laws 1889, to the comptroller to revise and readjust the tax. As we construe that act it was competent for the relator then to submit to the comptroller evidence that the amount of the capital stock employed within this state was erroneously fixed in the comptroller's account. This was not done,—that is to say, no evidence additional to that upon which the comptroller had previously acted was submitted. Perhaps this omission was due to the fact that the statute was new and the practice unsettled. The finding of the comptroller upon a question of fact within his jurisdiction is like the verdict of a jury, and, although the statute last cited authorizes us to review it upon the facts, we must do so within the limitations prescribed by Code, section 2140, subds. 4, 5. *People* v. *Wemple*, (Sup.) 14 N. Y. Supp. 859. Without declaring that we think the amount of capital stock employed in this state was accurately fixed by the comptroller, we uphold his finding because we cannot clearly ascertain from the evidence that it was wrong. Determination of the comptroller affirmed, with $50 costs and disbursements.

All concur.